## State of Louisiana *v.* J. St. George Hamill, et al.

The defendant was convicted and sentenced on the last day of the term, but not appearing to answer to the sentence, judgment was entered on his bail bond against his sureties, from which judgment they appealed. On the succeeding term the defendant appeared and submitted to the sentence of the court. The sureties took a rule, their appeal being still pending, to be discharged from the judgment against them on the bail bond. *Held :* They were entitled to be discharged.

The object of the bail bond is to secure the presence of the accused to answer to the charge. It would be unreasonable to require him both to submit to the punishment inflicted by the sentence, and at the same time to pay his bail bond.

The act of 11th of March, 1837, is not exclusive of the powers of the courts to relieve parties from the effects of judgments on forfeited bail bonds, as recognized by the common law. That statute points out one of the modes of relief, but does not exclude the common law remedies.

APPEAL from the District Court of East Feliciana, *Stirling*, J. *Z. S. Lyons*, District Attorney, for the State. *J. M. Elam*, for sureties. The judgment of the court was pronounced by

PRESTON, J. *J. St. George Hamill* was accused of assault and battery, and gave bond in the sum of $500, with *Kirkland* and *Dixon* as his sureties, to appear at the District Court for the parish of East Feliciana, in April, 1850, to answer to the charge. He appeared, and was tried and convicted on the 13th day of April. A motion was made for a new trial, which was overruled on Saturday the 29th day of April, being the last day of the term of the court. The accused and his securities were then called, and he not being produced, the bond was declared forfeited and judgment rendered against the principal and his sureties *in solido* for its amount and costs.

On the 10th of May the sureties applied for and obtained a suspensive appeal from the judgment against them. On the 16th of July, 1850, being the second day of the next term of the court after the conviction, the sureties produced the accused in court to receive the sentence of the law for the offence of which he was convicted, and he was sentenced to thirty days imprisonment, to pay a fine of five dollars and the costs of the prosecution.

The sureties then moved the court for a rule on the district attorney, to show cause why they should not be discharged from all further liability as sureties, and why the judgment rendered against them upon the bond should not be declared satisfied, on the ground that their principal had been produced and punished in satisfaction of the penal obligation of the bond. They set out other reasons and also excuses for the failure of *Hamill* to appear on the last day of the last term, which it is unnecessary to notice.

The district attorney answered that the sureties had shown no sufficient reasons why their rule should be made absolute, and traversed the allegations contained in it. He further opposed the rule because on the 10th of May, 1850, the sureties obtained from the court an order allowing them to appeal to the Supreme Court of the State from the judgment rendered against them, and that he had been cited to appear on behalf of the State and answer their petition of appeal; and therefore the district court had no longer jurisdiction of the case. The district court was of that opinion and dismissed the rule; from which judgment the sureties have appealed.

They rely for a reversal of the judgment on the following bill of exceptions: Be it remembered, that upon the trial of the rule to show cause, which had been previously obtained by the sureties of the accused in the above entitled case, the counsel for the said sureties offered to prove, by the records of the court and by other competent testimony, the following facts in support of said rule, viz: 1st. That the accused, *J. St. George Hamill,* appeared at the April term, 1850, of the Seventh Judicial District Court in and for the parish of East Feliciana, and State of Louisiana, and that the said *Hamill* was regularly tried and convicted of the crime of which he was charged, viz., the crime of assault and battery. 2d. That after the said trial and conviction, a motion having been made and filed by the counsel of the said *Hamill* for a new trial, a day was agreed upon, (as understood by the said *Hamill* and his counsel) upon which said motion was to be argued and decided, and the said *Hamill* was to receive his sentence in case the said motion was overruled; and that the said *Hamill* was in attendance on said day, viz., the Thursday preceding the Tuesday on which the said court adjourned, and that said motion was not then disposed of. 3d. That on the Saturday following the said Thursday and preceding the Tuesday on which the said court adjourned, the said *Hamill* was on his way to the courthouse in and for the parish of East Feliciana, where the said Seventh Judicial District Court was in session, but was informed by a person returning from the courthouse that said court had adjourned; whereupon, the said *Hamill* returned to his residence at Port Hudson, in the parish and State aforesaid, where he has continued until the present term of the court. 4th. That on the Monday preceding the adjournment of the court, which took place on Tuesday, the — day of —, and late in the morning of the day first aforesaid, and after all the business of the said court was disposed of, excepting the signing of the minutes of the said court, the said motion for a new trial in the said case of *The State* v. *J. St. G. Hamill* was taken up, and after argument, was overruled, and the bond of the said sureties and the said *Hamill* declared to be forfeited, and judgment accor-

dingly rendered thereon. 5th. That on the second day of the present term of this honorable court, being the first term immediately succeeding the term of said court at which the said bond was declared by said court to be forfeited, they the said sureties of the said *Hamill*, by their counsel, surrendered in open court the body of the said *Hamill;* whereupon the said court sentenced the said *Hamill* to thirty days imprisonment in the parish jail, to pay a fine of five dollars and the costs of the prosecution, and to stand committed until the sentence is complied with. 6th. That the said *Hamill* was, at the time said rule was taken up for a hearing, viz., on the 9th day of August, 1850, within the four walls of said prison, suffering the penalty of the law and abiding the sentence of the court.

To the introduction of evidence to prove the foregoing matters and things the district attorney in and for said parish and State objected, upon the following grounds, viz : That nothing could now be offered in support of the said rule which could have been plead in opposition to said judgment before it was rendered, and that said matters and things should have been urged at the term of the court at which the said bond was declared to be forfeited. That an appeal having been taken by the said sureties to the Supreme Court in and for said State from the judgment of the said Seventh Judicial District Court in and for said parish on said bond, the said Seventh District Court was without jurisdiction, and could not hear and pass upon the matters and things which were sought to be proved, and which were set forth and urged in said rule, as a reason why said sureties should be discharged.

And the court, after argument of counsel, and having taken the said objections to said testimony under advisement, came to the conclusion that the court was without jurisdiction in the premises, and that it could not hear and determine said rule, and therefore refused to hear any testimony whatever in support of said rule.

The counsel for the said sureties then prayed the court for leave to annex to this bill of exceptions the testimony of witnesses which was offered in support of said rule, in order that the Supreme Court might pass upon the admissibility and legal effect of the said testimony, and in case the said court should be of opinion that the said rule was improperly discharged without admitting any testimony in support of the same, that then and in that case said Supreme Court might render a final decision on said rule. But the court refused to suffer said testimony to be placed upon the record or to be annexed to this bill of exceptions. To which several rulings of the court the said sureties by their counsel excepted and tendered this bill of exceptions for the signature of the court.

The district attorney urged in addition to the objections stated in the foregoing to the introduction of testimony to prove the allegations in the rule, that under the act of 1837, the matters and things therein set up could not be proved, because no physical disability is alleged, and because the sureties being the custodiers of the accused under their bond, had alleged no sufficient cause why said rule should have been granted so far as they are concerned.

By the judge : The court refused to receive testimony on the grounds taken by the district attorney, but did not refuse to permit the counsel to annex to his bill the record in the case of *The State* v. *Hamill*, and it is ordered that he now have leave to do so. JAS. L. STIRLING, Judge. August 10th, 1850. Filed August 10th, 1850. F. HARDESTY, Clerk.

In the appeal taken by the sureties from the judgment rendered upon their bond, nothing can be examined but the correctness or incorrectness of that judg-

ment, and the decision must depend alone upon what was before the court in its rendition. In the rule now under consideration, the sureties applied to set aside that judgment, upon facts and for reasons not before the court in rendering the judgment.

It is not necessary, however, in this case to decide whether the district court had jurisdiction to annul the judgment while an appeal was pending, although we know of no reason why it might not be done upon sufficient grounds. Nor is it necessary to determine whether a judgment forfeiting a recognizance at one term of the court can be set aside at all at a subsequent term. There are cases in which the court would not do it if the power were conceded—as where the witnesses for the State were dead, or from other causes could no longer be had. In such a case the court would undoubtedly allow the State to proceed upon the forfeiture, instead of compelling it to pursue a vain prosecution.

The present case may be determined without investigating either of these subjects. The sureties allege that the judgment against them has been satisfied by the punishment of their principal, and that they have a right to have it decreed satisfied by the judgment of the court. To the bill of exceptions is annexed the record of the court in the case of *The State* v. *Hamill*, by which it appears that the accused, for whose appearance the sureties became bound, has been duly convicted and punished according to law for his offence.

The punishment of the offender took place subsequently to the appeal of the sureties from the judgment against them, and affords a ground of relief entirely distinct from the appeal. By the appeal they sought to reverse the judgment. By the rule we are considering they presented the sentence of the accused to punishment as a satisfaction of the judgment on the recognizance against him, the principal, and therefore as to them, the sureties; indeed, as a satisfaction by one of a judgment *in solido* against three defendants. They do not therefore seek to reverse the judgment, but contend that, whether right or wrong, it has been satisfied. The appeal therefore presents no obstacle to the determination of the question, whether or not the judgment has been satisfied.

At common law, the courts to which recognizances were made, in the language of the court in the case of *The King* v. *Tomb*, 10 Modern, 278, "the Courts of Oyer and Terminer are the proper judges whether recognizances are to be estreated, (as the term then was) or spared. The Court of Exchequer, to which a recognizance estreated was sent to be *enforced*, was authorized by statute to compound or discharge the recognizances, and both courts to extend the time for appearance, and thus, perhaps, perpetually to suspend the forfeiture."

The common law, thus modified by statute, was adopted by our Territorial Legislature, and we see no reason why our courts should not exercise the same discretionary powers which belonged to the courts in England.

The statute of 1837 provides that the judgment of forfeiture may be set aside at the same term at which it was rendered, by the appearance, trial and acquital or conviction and punishment of the accused; and that judgment of forfeiture should not be rendered at all if it was made to appear by evidence that he was prevented from attending court by physical inability. It is strenuously contended that by no other means and at no other time could the judgment of forfeiture be prevented or set aside when rendered.

The late Supreme Court decided, in the case of *The State* v. *Cotton*, that this was too literal and rigid a construction of the act of 1837. 19 L. R. 550. We concur with them, and consider that the Legislature by no means intended to curtail the necessary and salutary control of our courts by virtue of their com-

mon law powers over recognizances returned to them, until the actual payment of the penalty into the treasury.

Neither the appeal nor the statute of 1837 precludes us, therefore, from adopting in this case the principles held by Chief Justice Marshall in the case of *The United Stetes* v. *Feely*, and which he took pains to show he derived from the common law. He states the case as follows: "A *scire facias* has been sued out of this court by the attorney of the United States against *Feely* and his security, requiring them to show cause why execution should not be had against them on a recognizance entered into by them, conditioned for the appearance of *Feely* on the first day of the last term, to answer to an indictment filed against him in this court. *Feely* did not appear, and his default was recorded. He appeared on the first day of this term, and is now in custody on the motion of the attorney of the United States. It is contended on the part of the United States that this court possesses no power over this recognizance; that, being forfeited, it has become a debt due to the United States, which is no more subject to the control of the court than a debt upon contract."

Upon this argument and the facts stated, the chief justice, after examining the principles of the common law and statutes of England, observed: "The object of a recognizance is not to enrich the treasury, but to combine the administration of justice with the convenience of a person accused but not proved to be guilty. If the accused has, under circumstances which show that there was no design to evade the justice of his country, forfeited his recognizance, but repairs the default, as much as is in his power, by appearing at the succeeding term and submitting himself to the law, the real intention and objects of the recognizance are effected and no injury is done. If the accused prove innocent, it would be unreasonable and unjust in Government to exact from an innocent man a penalty intended only to secure a trial, because the trial was suspended in consequence of events which are deemed a reasonable excuse for not appearing on the day mentioned in the recognizance. If he be found guilty he must suffer the punishment intended by the law for his offence, and it would be unreasonable to superadd the penalty of an obligation entered into only to secure a trial. 1 Brockenbroug's Rep. 256.

Adopting the same principle in the present case, it would be more palpably unreasonable to superadd the penalty intended only to ensure the punishment of the offender to the infliction of the punishment itself.

This view of the subject is strengthened by the authority of Chief Justice Savage, of New York, who, in the case of *The People* v. *Stager*, observed that "one object of the recognizance is to cause the accused to appear and answer the charge, and to submit to such punishment, if any, as shall be adjudged; if that object has been answered by his subsequent arrest, then the bail are discharged." 10 Wendell's Rep. 435.

Had the bond in the present case been collected from his securities before the accused was arrested a second time, it is very true that its payment would not have prevented his punishment for the offence; for although the punishment satisfies the bond, the payment of the bond does not satisfy the law for the commission of the crime. It was the duty of the district attorney, therefore, to have prosecuted the bond as speedily as possible; the failure of the accused to appear did not prevent it; and if he had succeeded in having the money paid into the treasury before the accused submitted to the judgment of the court, the court would not have interfered to afford the securities relief, but have left them to the justice of the Legislature. So, if costs or expenses were incurred in pro-

STATE
v.
HAMILL.

secuting the bond to judgment, the State would be entitled to them. But it appears by the record that the accused was sentenced to stand committed until all costs were paid.

Upon the whole, therefore, we are of opinion that the rule should have been made absolute, and accordingly reverse the judgment of the district court, and decree that the judgment against the sureties of *Hamill* is satisfied, and their bail bond discharged.